UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JUAN RODRIGUEZ,

                Plaintiff,

- against -

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.
-----------------------------------------------------X

MEMORANDUM AND ORDER
CV-05-4606 (NGG)

GARAUFIS, District Judge

      Juan Rodriguez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to challenge Commissioner of Social Security Jo Anne B. Barnhart's ("Commissioner") refusal to review Administrative Law Judge Seymour Fier's ("ALJ") determination that Plaintiff was not eligible for Social Security disability benefits. At this time, the court considers Commissioner's motion for judgment on the pleadings. For the reasons set forth below, Commissioner's motion is GRANTED.

I.     BACKGROUND

    A.     **Procedural History**

      On March 8, 2001 Plaintiff filed an application for Supplemental Security Income ("SSI"), which was denied.[1] (Tr. 53-55, 45-48.) Plaintiff requested a hearing that was held on September 10, 2002 before the ALJ. (Tr. 203-25.) On October 29, 2002, the ALJ found that Plaintiff was not disabled. (Tr. 136-44.) Plaintiff requested a review of the ALJ's decision by

---

[1] In his brief, Plaintiff asserts he originally applied for benefits on August 9, 1996. (Pl. Br. 1.) However, there is no evidence that Plaintiff applied for benefits before March 8, 2001.

the Appeals Council. (Tr. 147-148). On October 17, 2003, the Appeals Council reviewed and remanded the case to the ALJ to resolve a number of gaps in the record. (Tr. 150-154.) After subpoenaing all of Plaintiff's medical records from the treating physicians (Tr. 35, 157, 195), the ALJ held second hearing on July 12. 2004. (Tr. 226-42.) On September 8, 2004. the ALJ found that Plaintiff was not disabled. (Tr. 13-20.) Plaintiff again requested a review by the Appeals Council, which was denied on August 16, 2005, thereby making the ALJ's decision final. (Tr. 2-4.) Plaintiff timely commenced this action seeking review of the decision of the Social Security Administration to deny his application for disability benefits. In his brief, Plaintiff notes that he reapplied for benefits on October 20, 2004, and was found disabled. (Pl. Br. 18.)

### B. Plaintiff's History

Plaintiff was born on June 10, 1955 in the Dominican Republic. (Tr. 230.) He came to the United States in 1972 after three years of schooling. and is currently a permanent resident. (Id.) He is unable to effectively communicate in English. (Pl. Br. 1; Tr. 203.) Plaintiff last worked in 1973 as a hospital porter. a restaurant dishwasher, and at a factory. (Tr. 207, 230, 231.) He alleges that he has been disabled since August 9, 1995 due to arthritis. depression, and hypertension. (Pl. Br. 1; Tr. 14.)

#### 1. The Medical Record

*Dr. Locuratolo*

In a letter dated October 5, 1995, Ruben Chan of the Downtown Family Care Center stated that Plaintiff had been diagnosed with "Gouty Arthritis". (Tr. 129.) Dr. Luis Locuratolo, Plaintiff's treating psychiatrist since 1995, diagnosed and treated Plaintiff's anxiety, depression, and arthritis. (Tr. 196-97.) Dr. Locuratolo produced records of seeing Plaintiff, twice in 1995,

2

once in 1997, once in 2000, once in 2001, and once in 2002. (Tr. 197-200.) In a 2001 psychiatric report, Dr. Locuratolo stated that the Plaintiff was "vulnerable [and] unable to tolerate pressure and stress", noting a marked limitation of the ability to carry out day to day activities, and the ability to hold a job. (Tr. 118, 120.) In a letter dated August 29, 2002, Dr. Locuratolo asserted that Plaintiff had "persistent generalized anxiety" and "moderate to severe depressive disorders", having been "unable to work in a substantial gainful job for twelve consecutive months since 1974 . . . due to his physical and emotional disorders." (Tr. 201-202.) He indicated that Plaintiff had Osteroarthritis, "[Cervical and Lumbar] sciatic spine pain, radiated to left leg [and] swelling [of the] left knee." (Id.) He further asserted that Plaintiff was unable to "do different daily activities . . . has felt very nervous and tense, [has] frequent headaches and stomach disorders . . . crying spells, trouble sleeping, feels tired all day, [and] lack[s] energy". Dr. Locuratolo found that Plaintiff has "trouble concentrating", is "forgetful", and exhibits "withdrawal behavior and low self esteem." (Id.) Dr. Locuratolo concluded that Plaintiff requires "longstanding medical, orthopedic, and psychiatric treatments to prevent further deterioration. His prognosis is poor." (Id.)

### *Dr. Blanco*

Dr. Juan Ebert Blanco, Plaintiff's treating physician, initially noted Plaintiff's pain in the cervical spine and shoulder, and diagnosed him with gout on November 8, 1999. (Tr. 158.) Plaintiff's blood pressure was 150/100. (Id.) In a letter dated December 1, 2000, Dr. Blanco stated that Plaintiff "suffers from hypertension, osteoarthritis, [and] vertigo sensations. He also has a history of mental depression and elevated uric acid." (Tr. 177.)

On December 4, 2000, Dr. Blanco noted in a medical report that Plaintiff exhibited

3

symptoms of pain in his left hip, knee, and cervical spine. (Tr. 178.) He further noted that Plaintiff is unable to "stand for prolonged periods of time", has limitations stooping, pulling, lifting, pushing, and kneeling, and should avoid working under pressure, outside, and for more than one hour per day. (Tr. 178-79.)

In a report dated February 26, 2001, Dr. Blanco indicated that Plaintiff has had arthritic pain for ten years and hypertension for five. (Tr. 112.) He noted Plaintiff's complaints of pain in the cervical spine, shoulders, and right hand, and concluded that arthritic pain may worsen as a result of regular work. (Tr. 112-13.) Dr. Blanco also concluded that Plaintiff can sit for a total of four hours in an eight hour work day, stand and walk for two hours, and can use his hands and arms, but not his legs and feet, for repetitive motion. (Tr. 114-15.) Finally, Dr. Blanco indicated that Plaintiff cannot drive due to motion sickness, but can travel by public transportation. (Tr. 115-16.)

On April 30, 2001, Dr. Blanco submitted a report indicating that Plaintiff received monthly treatment for hypertension and arthritis. (Tr. 83.) His blood pressure at the time was 160/110. (Id.) Dr. Blanco noted that Plaintiff has high cholesterol. (Tr. 84.) He asserted that Plaintiff was limited to two hours standing or walking per day, and six hours of sitting. (Tr. 85.) In addition, he noted no push/pull limitations with the hands or feet, and that Plaintiff was limited to lifting and carrying no more than 20 pounds for up to 1/3 of the work day. (Tr. 85-86.) Relevant tests indicated a near full range of motion in Plaintiff's shoulder, elbow, wrist, knee, hip, spine, and ankle areas. (Tr. 88-89.)

Plaintiff saw Dr. Blanco on August 27, 2001 and complained of pain and swelling in the left ankle. (Tr. 162.) On February 1, 2002, Plaintiff had been out of medication for the previous

three months, and complained of pain in his joints. (Id.) His blood pressure was 170/105. (Id.) On September 6, 2002, Dr. Blanco noted that Plaintiff had stopped taking his medicine, and warned him of the potential dangers. (Tr. 163.) Plaintiff's blood pressure was 180/110, although other tests proved normal. (Id.) He was diagnosed with Gastritis. (Id.) On September 23, 2002, Dr. Blanco indicated Plaintiff's elevated uric acid, cholesterol of 278 mg, and blood pressure of 138/85. (Id.)

### Dr. Balinberg

On April 16, 2001, Plaintiff was examined by Dr. E.B. Balinberg, a consulting physician, who took note of Plaintiff's complaints of pain and inability to "stand or walk too far". (Tr. 75.) Dr. Balinberg also noted that Plaintiff rests after short walks, receives help from a friend with daily chores, and travels by subway. (Id.) Dr. Balinberg opined that he "has a depressed mood but [is] able to relate correctly [and engage in a] normal level of communication." (Id.) He observed a near full range of motion and Plaintiff's ability to dress himself, despite some pain and pressure in the ankles and wrists. (Tr. 76.) He noted that Plaintiff was neurologically "alert and cooperative" with normal levels of coordination. (Id.) Dr. Balinberg diagnosed Plaintiff with "hypertension, arthritis, possibly osteoarthritis", as evidenced by joint space narrowing and blood pressure of 170/90. (Tr. 74, 77.) These conditions were thought to limit Plaintiff's ability to "stand for long periods of time, to walk a distance, to lift, to carry, to push and pull heavy loads". (Tr. 77.)

### Dr. King

On April 16, 2001, Plaintiff was also examined by Dr. Richard King, a consulting psychiatrist. (Tr. 81.) Dr. King observed that Plaintiff was "casually dressed, neatly groomed

5

and had good personal hygiene." (Id.) Plaintiff "established a good rapport", was "cooperative", "well modulated", and had no history of hallucinations, delusions, paranoia, or suicidal tendencies. (Id.) In addition, Plaintiff's memory, intellectual abilities, judgment, concentration, and orientation were intact. (Id.) Dr. King indicated that Plaintiff's complaints were only "partially credible", and concluded that he "has a satisfactory ability to understand, carry out and remember instructions and a satisfactory ability to respond appropriately to supervision, co-workers and work pressures in a work setting." (Tr. 81-82.) Dr. King concluded that Plaintiff had "adjustment disorder and mild anxiety and depression." (Tr. 82.)

## II. DISCUSSION

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), the District Court's review of the Social Security Administration's final decision denying SSI benefits under 42 U.S.C. § 423 is limited. The Court may only look to whether there was substantial evidence in the record to support the Commissioner's findings, or whether the findings were based on legal error. Shaw v. Carter, 221 F.3d 126, 131 (2d Cir. 2000); Wagner v. Sec. of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). "Substantial Evidence" is defined as "more than a mere scintilla"–"evidence that a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); accord Wagner, 906 F.2d at 860.

### B. The ALJ's Decision

When the Appeals Council denies a claimant's request for review, the decision of the ALJ becomes "the final decision of the Commissioner." 20 C.F.R. §§ 404.981, 416.1481; see

Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996). The Social Security Administration requires the ALJ to use a five-step sequential analysis to determine whether a claimant is "disabled" and entitled to benefits. 20 C.F.R. § 404.1520(a)(4); see Williams v. Apfel, 204 F.3d 48, 49 (2d Cir. 1999). The ALJ must first determine whether the claimant is engaging in substantially gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If the claimant is not engaging in such activity, the ALJ must then determine whether the claimant has a severe impairment that limits his or her work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If such an impairment exists, the ALJ must determine whether the impairment meets the criteria found in Appendix 1 of 20 C.F.R. Pt. 404 Subpt. P. ("Listings of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the impairment does not meet a listed impairment, the ALJ, using the standards of residual functional capacity as described in 20 C.F.R. § 404.1520(e), must determine whether the impairment prevents the claimant from performing his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv), (f). Finally, if the claimant cannot perform past work, the ALJ must, under 20 C.F.R. § 404.1545, determine whether his or her impairment allows for performance of other work. 20 C.F.R. § 404.1520(a)(4)(v), (g). If all steps are met, the ALJ will find the claimant to be disabled. In making such a determination, the ALJ must consider "all evidence in the administrative record." 20 C.F.R. § 404.1520(a)(3).

In the instant decision, the ALJ found that Plaintiff was not disabled under the Social Security Act. The ALJ first described Plaintiff's personal and work history. (Tr. 14.) In determining that Plaintiff's impairment was severe at step two, the ALJ indicated that the medical record supports diagnoses of mild depression, hypertension, and arthritis. (Id.) The ALJ noted Dr. Blanco's record of Plaintiff's general course of treatment, subjective pain

complaints, fluctuation in blood pressure. and medication. (Tr. 14.) He also noted Dr. Blanco's conclusions that Plaintiff was unable to stand for long periods of time, his hip pain increases in cold weather, and that work activity may worsen arthritic pains. (Tr. 15.) This was contrasted with tests indicating a "full range of knee motion", and "only increased uric acid levels and high cholesterol levels." (Tr. 15.)

The ALJ found that Dr. Blanco presented contradictory functional capacity statements: on the one hand, Dr. Blanco concluded that Plaintiff had some "postural" limitations, indicating that Plaintiff did not have walking limitations; the other hand, Dr. Blanco found that Plaintiff could walk for up to two hours per day. but that Plaintiff was not prohibited from using public transportation.[2] (Id.) The ALJ also found that Plaintiff's taking the subway to see Dr. King "stands in direct contradiction to Dr. Blanco's statement that his patient is unable to use the subway."[3] (Tr. 17.)

The ALJ noted the symptoms, complaints. and treatments reported by Dr. Locuratolo since 1995, as well as the letter indicating that Plaintiff has been unable to work since 1975 due to his impairments. (Tr. 15.) The ALJ then determined that there was a lack of a clear diagnosis over time. as well as objective diagnostic or examination records to support Dr. Locuratolo's findings.[4] (Id.)

---

[2] It should be noted. however. that this contradiction is not readily apparent. In his initial December 4, 2000 assessment. Dr. Blanco failed to place a check or "X" in the box to indicate whether Plaintiff had a walking limitation. (Tr. 178.)

[3] Again. it should be noted that this contradiction is impalpable. (Tr. 15.) In Dr. Blanco's 2001 report, he failed to place a check or "X" in the box to indicate whether Plaintiff could travel by subway on a daily basis. (Tr. 184.)

[4] The court finds little support for this finding in the record. In 2002. Dr. Locuratolo made a diagnosis of "persistent generalized anxiety" and moderate to severe depressive disorders." (Tr. 201.) The court sees little need to reiterate Plaintiff's diagnosis throughout the course of treatment.

8

The ALJ contrasted Dr. Blanco's findings with those of Dr. Balinberg, who observed that Plaintiff had a near full range of motion and use of arms and hands. (Tr. 17-18.) The ALJ also contrasted the findings of Dr. Locuratolo with those of Dr. King, who indicated that Plaintiff was not severely psychiatrically or intellectually limited, and Dr. Cohen, who testified that Plaintiff could perform medium work. (Tr. 16.) The ALJ found that Dr. Blanco's records "are not very definitive", and fail to support a finding of an inability to walk, sit, or stand for less than six hours per day. (Tr. 16.) In addition, the ALJ found that Dr. Locoratolo's documents fail to support a severe psychiatric condition. (Tr. 17.)

The ALJ then questioned the credibility of Plaintiff's testimony, pointing to his daily activities, having not taken his psychiatric medication, and failing to find adequate support for serious diagnoses in the medical record. (Tr. 16-18.) The ALJ found that despite complaints of severe pain and hypertension, Plaintiff did not use a cane or knee brace, failed to seek significant levels of treatment or hospitalization, and did not appear limited at the hearing. (Id.) Nor did Plaintiff's subjective testimony persuade the ALJ, who concluded at step three that Plaintiff's impairments were insufficient to meet the requirements of the "Listings of Impairments". (Tr. 17.) Regarding step four, the ALJ noted that Plaintiff did not have any relevant past work. (Id.) The ALJ then moved to the fifth and final step and determined that Plaintiff could perform other work. (Id.) The ALJ decided to not give "controlling, or even great weight" to the treating physician opinions, because Plaintiff's treating physician opinions and personal testimony lacked objective medical support, and were inconsistent with the opinions of consulting physicians. (Tr. 18.)

9

Taking into account Plaintiff's age, education, work experience, and residual functional capacity, the ALJ asked a vocational expert to opine on the existence of jobs that Plaintiff could perform. (Id.) The vocational expert found three light and unskilled jobs: gas tender, vehicle washer, and rest room attendant. (Id.) Thus, the ALJ found that the Commissioner had met his burden of proving that Plaintiff could perform other work, and that Plaintiff was not disabled. (Id.)

### C. The Plaintiff's Claims

#### 1. Failure to Support Findings With Substantial Evidence

Plaintiff argues that the ALJ failed to support with substantial evidence the finding that Plaintiff had the ability to perform light work. (Pl. Br. 13.) Under 42 U.S.C. § 405(g), the findings of the ALJ at the final step are decisive only when supported by substantial evidence. See Shaw, 221 F.3d at 131; Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must support his or her findings with affirmative evidence demonstrating the claimant's residual functional capacity. Rosa v. Callahan, 168 F.3d 72, 80-81 (2d Cir. 1999); Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983) (finding that an ALJ who failed to obtain evidence specifically indicating that a claimant could perform sedentary work had not supported a finding that the claimant could perform such work with substantial evidence). In Rosa, the ALJ supported his finding that the claimant was able to perform sedentary work with the opinions of consulting physicians, who only reported general functional limitations regarding "work-related physical activities". Rosa, 168 F.3d at 80. The court held that the testimony concerning the claimant's general functional limitations was insufficient to support the ALJ's

10

finding that the claimant could perform sedentary work. Id. at 80-81. The ALJ's finding must be supported by specific and affirmative evidence. See id. at 80.

In this case, the ALJ supported his findings that Plaintiff could perform other work with substantial evidence. Although the findings of Dr. Balinberg and King presented general work related abilities and limitations, the instant case is distinguishable from both Carrol and Rosa, because the ALJ relied on the expert testimony of Dr. Cohen, who specifically stated that Plaintiff was "capable of medium work." (Tr. 77, 81-82, 239.) Furthermore, the ALJ described Plaintiff's limitations to a vocational expert, who stated that Plaintiff could be a gas attendant, vehicle washer, and restroom attendant. (Tr. 18.) Thus, the ALJ found that the Commissioner had fulfilled his burden of showing that Plaintiff was not disabled with affirmative evidence.

### 2. Failure to Complete the Record

Plaintiff argues that the ALJ failed to fulfill his duty to complete the medical record by obtaining additional documentation from Plaintiff's treating physicians, Dr. Locuratolo and Dr. Blanco.[5] (Pl. Br. 14.) The Second Circuit has remanded cases where the ALJ rejected the opinion of a treating physician without first attempting to complete clear gaps in the treating physician's treatment records. Rosa, 168 F.3d at 79 (determining that an ALJ committed legal error by failing to seek out supporting medical records after discounting a treating physician report for being sparse and conclusive); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (finding that the ALJ erroneously rejected a treating physician opinion for lack of objective medical evidence without first obtaining treatment records from claimant's treating physician); Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (determining that an ALJ who based his finding

---

[5] Plaintiff does not argue that the ALJ erred by failing to call his treating physicians to testify.

on the opinion of a medical expert who had not examined the claimant and was presented with an incomplete medical record, had erred as a matter of law).

Because absence of evidence is not necessarily evidence of absence, it is the ALJ's duty, in light of "the essentially non-adversarial nature of a benefits proceeding", to seek out additional information *sua sponte*. Clark, 143 F.3d at 118; see also Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). Further, the ALJ must use "every reasonable effort" to obtain the missing evidence. 20 C.F.R. § 404.1512(d). "Every reasonable effort" includes issuing and enforcing subpoenas as authorized by 42 U.S.C. § 405(d). Suriel v. Comm'r of Soc. Sec., 05 Civ. 1218 (FB), 2006 WL 2516429, at *4 (E.D.N.Y. Aug. 29, 2006) (ALJ did not use reasonable efforts to complete the record when ALJ failed to subpoena a treating physician's report outlining the nature of a claimant's condition); see also Sanchez v. Barnhart, 329 F. Supp. 2d 445, 451 (S.D.N.Y. 2004). In Sanchez, the claimant's treating physician had diagnosed her with fibromyalgia, but "did not elaborate upon [her] condition other than to describe her physical pains and the medications prescribed." Sanchez, 329 F. Supp. at 451. The treating physician's opinion was the only medical evidence in the record addressing the claimant's alleged fibromyalgia. Id. The ALJ then issued a subpoena to the treating physician to turn over all records pertaining to the claimant, to which the physician did not respond. Id. At that point, it was "not clear as to whether further medical records exist[ed] regarding Sanchez's fibromyalgia diagnosis." Id. The court remanded the case, because "[m]erely issuing a subpoena by mail is not the legal equivalent of making 'every reasonable effort' to obtain the medical reports." Id.

However, the ALJ is exempt from completing the record when it is known "from past

12

experience that the source either cannot or will not provide the necessary findings." 20 C.F.R. § 404.1512(e)(2). Similarly, at least one court has held that an ALJ fulfills his obligation to use "every reasonable effort" to complete the medical record by subpoenaing the treating physician. In Thomas v. Barnhart, 01 Civ. 518 (GEL), 2002 WL 31433606, at *5 (S.D.N.Y. Oct. 30, 2002), the ALJ subpoenaed medical records from a treating source regarding the claimaint's psychiatric condition. Id. Although the source failed to respond to the subpoena, the court held that the ALJ had fulfilled his duty of using "every reasonable effort" to complete the medical record, because the ALJ had given the source "ample time" to respond, and there was other evidence in the record pertaining to the claimant's psychiatric condition. Id. As a result, Thomas is distinguishable from Sanchez, where the failure to obtain the treating physician's records resulted in there being absolutely no evidence in the record concerning the claimant's medical condition.

In this case, the ALJ adequately developed the record with respect to Dr. Blanco. Although the ALJ initially rejected Dr. Dr. Blanco's opinions on the basis of scant treatment notes (Tr. 136-44), on remand from the Appeals Council, the ALJ subpoenaed all relevant medical records in order to fill any previous gaps. (Tr. 35, 157.) Dr. Blanco responded by providing records that corresponded to the dates of Plaintiff's treatment. (Tr. 158-76, 186). Thus, the ALJ did not commit legal error when he considered Dr. Blanco's opinion alongside other relevant evidence in the record.

Plaintiff argues that the ALJ "made some ineffectual attempt to get additional records from Dr. Locuratolo." (Pl. Br. 14.) At the September 10, 2002 hearing, Plaintiff testified that he believed he had seen Dr. Locuratolo once every two months over the course of five years. (Tr.

209.) At the July 12, 2004 hearing, Plaintiff testified that he remained unsure, but believed he had last seen Dr. Locuratolo three months prior. (Tr. 234.) When asked about the first and last dates in a treating physician report, and the frequency of Plaintiff's treatment, Dr. Locuratolo noted only the first date of treatment on October 12, 1995. (Tr. 117.) After failing to obtain a response to a request for supporting medical records in time for the September 10, 2002 hearing (Tr. 209), the ALJ issued a subpoena requiring Dr. Locuratolo to "produce all records pertaining to the care and treatment of Mr. Juan Rodriguez." (Tr. 195.) In response, Dr. Locuratolo provided nine pages, four of which were records of seeing Plaintiff twice in 1995, once in 1997, once in 2000, once in 2001, and once in 2002. (Tr. 196-97, 199-200.) Therefore, although Dr. Locuratolo's records do not align with Plaintiff's alleged frequency of treatment, he nevertheless responded to a court order for all documentation regarding Plaintiff. Further, the record provides no indication of gaps in Dr. Locuratolo's treatment notes. Nor does Plaintiff point to any such gaps in his brief. In the records produced by Dr. Locuratolo, there are gaps in treatment dates, ranging from several months to several years on the same page. (Tr. 197-99.) Thus, even if Dr. Locuratolo did treat Plaintiff as frequently as Plaintiff testified, there is no evidence that Dr. Locuratolo actually created and maintained notes that correspond to the alleged frequency of treatment.

The ALJ used "every reasonable effort" to complete Dr. Locuratolo's medical record of Plaintiff. Before the hearing held on September 10, 2002, the ALJ requested supporting medical records from Dr. Locuratolo, but Dr. Locuratolo failed to produce any records. (Tr. 209.) The ALJ then subpoenaed Dr. Locuratolo on March 27, 2004, three and a half months before Plaintiff's second hearing on July 12, 2004. (Tr. 195, 226.) Therefore, as in Thomas, Dr.

14

Locuratolo was given ample time to respond with any relevant records. Further, there was already evidence in the record regarding Plaintiff's psychiatric condition. Although Dr. King, as a consulting psychiatrist, examined Plaintiff once, he provided a clear finding and objective evidence in support of that finding. This case is also distinguishable from Sanchez, because although it is ultimately unclear whether further medical records exist regarding Plaintiff's psychiatric condition, Dr. Locuratolo in fact responded to the ALJ's subpoena after failing to turn over medical records at the ALJ's initial request. This case is also distinguishable from Suriel: Dr. Locuratolo provided a letter describing the nature and extent of Plaintiff's psychiatric condition, whereas the ALJ in Suriel failed to obtain the treating physician's report regarding the claimant's condition. (Tr. 201-02.)

Significantly, at the September 10, 2002 hearing, the ALJ noted that Dr. Locuratolo had failed to respond to requests for records, and that "Dr. Locuratolo has traditionally been hesitant about submitting any medical records, although pressed with subpoenas and other forms of legal process." (Tr. 209-10.) Thus, having noted from past experience that Dr. Locuratolo can or will not provide requested information, the ALJ was under no obligation to seek further information, and did not err by weighing the evidence in the record against the findings of Plaintiff's treating physicians.

### 3. Failure to Give Appropriate Weight to Treating Physician Opinions

Plaintiff argues that the reports provided by his treating physicians provide "ample evidence" of a severe impairment and disability, but that the ALJ instead arbitrarily sided with the reports of the consulting physicians. (Pl. Br. 13.) The Second Circuit has held that the opinion of a treating physician is binding on the Commissioner if it is supported by substantial

medical findings and is not inconsistent with other substantial evidence. Rosa, 168 F.3d at 78-79; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(2)); Wagner, 906 F.2d at 861. In assessing the report of the treating physician, the ALJ, as a layperson, "'cannot arbitrarily substitute his own judgment for competent medical opinion'"; rather, the ALJ's conclusions must be supported by substantial evidence. Rosa, 168 F.3d at 79 (quoting McBrayer v. Sec'y. of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)); see also Carroll, 705 F.2d at 643 (finding that an ALJ who rejected a treating physician opinion and failed to cite a medical or vocational expert opinion indicating that the claimant could perform sedentary work had failed to support his conclusion with substantial evidence). However, it is ultimately the function of the ALJ to weigh the evidence and resolve conflicts therein. Wagner, 906 F.2d at 861; Aponte v. Sec'y of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

Even when an ALJ finds that a treating physician opinion is contradicted by substantial evidence, the opinion is nonetheless "entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians." Wagner, 906 F.2d at 861 (internal quotation marks omitted). Specifically, the ALJ must explicitly consider "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Clark, 143 F.3d at 118 (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). In contrast, the opinion of a consulting physician "should be given limited weight. . . . because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and,

at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990).

In this case, the opinions of Plaintiff's treating physicians, Dr. Blanco and Dr. Locuratolo, are not binding on the ALJ. The ALJ considered their reports that Plaintiff was mentally and physically impaired to the point that he was unable to work, and found that they remained unsupported by the objective medical evidence in the record. (Tr. 16, 112, 201.) The ALJ also found that the treating physician opinions remained contrary to the findings of Dr. Balinberg, Dr. King, and Dr. Cohen, who concluded from their examinations and Plaintiff's medical record that Plaintiff was only mildly physically and mentally impaired and able to work. (Tr. 16, 77, 81-82.) In short, the ALJ found that Plaintiff's treating physician opinions were not supported by substantial evidence, while contrary physician opinions were supported by such evidence.

Further, the ALJ appropriately weighed the treating physician opinions against those of the consulting and expert physicians. The ALJ considered the factors set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)). Concerning the first factor, he noted that the evidence in the record indicated that Plaintiff had sought a relatively conservative and infrequent level of treatment in relation to the treating physician's diagnoses. (Tr. 16-18.) The record indicates that Plaintiff saw Dr. Locuratolo six times over the course of seven years, and no more than twice in any given year. (Tr. 197-200.) Plaintiff saw Dr. Blanco between two and three times a year for four years, although in 2000, Plaintiff saw Dr. Blanco five times. (Tr. 158-163.) Furthermore, over his course of treatment, Plaintiff was never hospitalized, and was never prescribed a cane or brace. (Tr. 16, 18.)

17

As to the second and third factors, the ALJ specifically pointed to the lack of evidence in the record to support the treating physician opinions, the ALJ noted that Dr. Locuratolo's opinion that Plaintiff was severely depressed, anxious, and unable to tolerate a work environment (Tr. 201-02, 118, 120) was unsupported by Dr. Locuratolo's complete treatment records. (Tr. 16.) The ALJ also noted that Dr. Locuratolo's opinion was contradicted by Dr. King's finding that Plaintiff was only mildly depressed and anxious, and can adequately function in a work environment. (Tr. 17, 81-82.) The ALJ found that Dr. Blanco's opinion that Plaintiff was unable to work remained unsubstantiated and contradicted by medical evidence that Plaintiff had a near full range of motion and was only unable to stand for prolonged periods of time. (Tr. 16-18, 81, 85.)

Finally, regarding the fourth factor, the ALJ indicated that both Dr. Locuratolo and Dr. King were psychiatrists.[6] (Tr. 16-18.) Therefore, although the opinions of non-treating physicians are given significantly less weight as a matter of law, the ALJ appropriately exercised his power as the ultimate fact-finder in weighing the contrasting opinions according to the evidence in the completed record.

### 4. Credibility Should Not Be Doubted

Plaintiff argues that the ALJ had no reasonable basis for doubting Plaintiff's credibility. (Pl. Br. 18) The Second Circuit has generally given very limited weight to the ALJ's opinion, as a layperson, assessing the credibility of a claimant's testimony about his or her disability based

---

[6] Although the ALJ failed to specifically state that Dr. Locuratolo was a psychiatrist, the ALJ indicated that Dr. Locuratolo was treating Plaintiff for "generalized anxiety with depression." (Tr. 15.) The ALJ also directly compared the diagnoses and records of Dr. King and Dr. Locuratolo regarding Plaintiff's psychiatric state. (Tr. 16-18.) Therefore, the ALJ exhibited a clear understanding that Dr. Locuratolo was, in fact, a psychiatrist.

18

on the ALJ's personal observations at the hearing, or a claimaint's testimony concerning his daily activities. Carroll, 705 F.2d at 643 (finding that an ALJ's observation that a claimant did not appear in pain and immobile at a hearing did not merit doubting the presence of disability, because it fails to indicate what a claimant may do for sustained periods of time); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ's finding that a claimant is occasionally able to perform certain activities, such as watching TV, going for a short walk, and taking the subway should not itself provide a basis on which to doubt the claimant's ability to undergo such activities over a full work day). But "there is no *per se* legal error where the ALJ considers physical demeanor [or daily activities] as one of several factors in evaluating credibility." Schaal, 134 F.3d at 502.

In this case, the ALJ provided good reasons for doubting Plaintiff's personal testimony. At the hearing, the ALJ found that Plaintiff did not appear immobile or in pain, and did not use a cane or knee brace. (Tr. 16.) The ALJ further noted that during Plaintiff's alleged period of disability, he had taken the subway and left the house alone for a walk. (Tr. 18.) But the ALJ also pointed to the lack of evidence in the record in support of Plaintiff's subjective complaints. (Tr. 16-18, 81-82.) Thus, the ALJ did not commit legal error. Although occasionally leaving the house by oneself, riding the subway, and appearing in good form at his hearing without a cane or brace does not by itself indicate a finding of not disabled, such observations, when combined with the other factors considered by the ALJ, may provide a reasonable basis on which to doubt Plaintiff's personal testimony. See Schaal, 134 F.3d at 502.

### 5. Subsequent Finding of Disability

Plaintiff argues that the Social Security Administration's 2005 determination that he was disabled (in response to Plaintiff's 2004 application) proves that he was disabled at the time of his original 2001 application. (Pl. Br. 18) This argument fails for three reasons. First, Plaintiff cites absolutely no precedent in support of this proposition. Nor is this court aware of any such precedent. Cf. Thomas, 2002 WL 31433606, at *6. Second, whether Plaintiff was disabled at the time of his 2004 application is a separate question from whether Plaintiff was disabled at the time of his 2001 application. Third, even if the evidence supporting the 2004 application was identical to the evidence supporting the 2001 application, this court's review is limited to whether the Commissioner committed legal error and whether the Commissioner's decision is supported by substantial evidence. The fact that the court concludes that the Commissioner's initial decision that Plaintiff was not disabled is supported by substantial evidence in no way means that there is not substantial evidence supporting Commissioner's ultimate decision that Plaintiff is disabled.

## III. CONCLUSION

For the reasons set forth above, Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to close this case.

Dated: July 23, 2007
Brooklyn, N.Y.

/signed/
NICHOLAS G. GARAUFIS
United States District Judge